LYLESE SANDS, on Behalf of AUSTIN L. SANDS, 3d, Petitioner, v. AUSTIN L. SANDS, SR., et al., Respondents.

Domestic Relations Court of the City of New York, Family Court, Kings County, November 28, 1949.

*Erwin Weiss* for petitioner.

*D. R. J. Arnold* for Austin L. Sands, Sr., and another, respondents.

*Abraham M. Feinstein* for Harry Popick, respondent.

I. MONTEFIORE LEVY, J. What is the responsibility of grandparents for the support of grandchildren? This has been clarified by the Appellate Division when in 1948 it stated in *Sands* v. *Sands* (273 App. Div. 872) : " Order of Domestic Relations Court of the City of New York (Family Court), County of Kings, directing, as amended, appellant to pay $50 a month toward the support of a grandchild, reversed on the law and the facts and the proceeding dismissed, without costs. There is no proof in this record that the child is likely to become a public charge or that its parents are without means or are unable to earn sufficient to support the child. (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 2; L. 1933, ch. 482.) "

Between the same and additional parties, namely, all grandparents, a petition for support has been filed in this court on behalf of the grandchild now five years of age. After a long trial, the issues having been most ably presented by opposing counsel, this court finds:

1. The grandchild is now five years of age, in delicate health.

2. The father of the child, Austin L. Sands, Jr., could not be apprehended on a warrant for his arrest because of his absence from the State to a place unknown. He has never contributed to the support of his child. He was without adequate means even before then, as evidenced in the proceeding instituted by his wife for nonsupport.

He has been married three times. The first marriage to Countess Jacqueline de Lauder ended in divorce. His second marriage to Paola de Jance ended in divorce.

His third marriage is to his present wife.

3. The mother of the child cannot leave the child unattended and therefore cannot engage in employment. She has no means, depending at present entirely upon the gratuity of her mother.

4. The maternal grandmother, Mildred Popick, herself in poor health, is now in debt and her salary has been garnisheed because of her contribution to the grandchild's support. She is a saleswoman earning on the average of $50 a week, and has no other income. The grandchild is therefore in immediate danger of becoming totally a public charge.

5. The paternal grandfather, Austin L. Sands, Sr., is ill. He has a conceded estimated average income of $140 a month from a $30,000 trust fund and/or from stocks and bonds. Owns a small country home.

6. The paternal grandmother, Gwendalyn Sands, employed as resident manager, has an income of 3% on rentals from an apartment house yielding rentals on the average of $116,000 a year. On this apartment house she owns a second mortgage of $230,000, but has no income from that at present.

7. The maternal grandfather, Harry Popick, divorced from Mildred Popick, is remarried, unable to work as a result of a serious work accident, and has no means with which to contribute to the support of this child.

8. Austin L. Sands, Jr., cannot be found either within or without the State.

9. That the mother of the child is not possessed of sufficient means or able to earn such means to pay a fair and reasonable sum for the child's support.

10. That the child is unable to secure adequate support from its father or mother, or both.

11. That the child's maternal grandmother and the child's paternal grandfather and grandmother are of sufficient means to help support it, and they are hereby declared to be chargeable with the partial support of such grandchild. (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 3; L. 1933, ch. 482.)

12. That they are therefore required to pay a fair and reasonable sum for the support of such grandchild, according to their means as follows:

a. The maternal grandmother, Mildred Popick, is directed to pay $7 weekly.

b. The paternal grandfather, Austin L. Sands, Sr., is directed to pay $5 weekly.

c. The paternal grandmother, Gwendalyn Sands, is directed to pay $5 weekly.

d. The first date in which such payments are to be made shall be December 1, 1949. These payments shall be made to the support bureau of the court, except the payment of the maternal grandmother may be made direct by her to the mother of the child, to be used solely for the support of said child.

13. No provision is made for contribution by the maternal grandfather because the court finds he has no means with which to contribute to such support.

One gathers that this case is a demonstration of a young man spoiled by indulgence. His parents are persons of breeding and distinction.

Most of the cases in this court concerning children's welfare arise from too little parental care; children of broken homes; or parents who marry and remarry, have children in and out of wedlock, and then let the community care and provide for them. It is therefore particularly sad to find a young man of good parents and with many fine attributes, nevertheless, as a father and husband, irresponsible to his obligations. Too much kindliness as a child did not militate to his own good. What may be good for one child is not always of advantage to another.

The rule of reason applies in the bringing up of children as in all other paths of life.